Harper, J.
If the transaction had been that at the time defendant lent the note of Dubose to plaintiff, he had merely sold it to him, and plaintiff had paid him for it without taking an indorsement, defendant certainly would not have been liable. The question seems to have been settled by the case of Thornton v. Harley, decided by this Court at Spring Term, 1833.* That case related to a bank note, which was passed *510 in the ordinary course of business, and which was said to stand oil the same footing as negotiable notes and bills, and banker’s checks. The rule is said in that case, to be settled, “that if such a note or bill be paid in satisfaction of a previous debt, or if it be paid in the ordinary course of business for a debt contracted at the time, as for goods sold,, and it turns out to be bad, the person receiving .it may resort’ to and recover on the original cause of action. If the note, however, be sold or discounted, or if there be an understanding or agreement that the party receiving shall take it as payment and abide the risque, there can be no recourse if it prove bad.” In the same case is quoted what is said by Lord Eldon in ex parte Blackburn, 10 Ves. 206: “It has been held that if A. carries a bill to B. to be discounted, and B. does not take A’s. name upon the bill,, if it is dishonored there is no demand •, for there was no relation between the parties except that transaction, and the circumstance of not taking the name upon the bill is evidence of the purchase of the bill.” This is the very case *511 which I have supposed. When there is a distinct cause of action, as a previous debt or one contracted for goods sold at the time, a bad bill is held to be no. payment, and that cause of action may be sued on. But when the bill is sold, there is no cause of action but a supposed undertaking for the debt of another, which comes within the terms of the statute of frauds. If there were a deceit, by the vendor’s representing the bill to be good when he knows it to be bad, this would be a ground of action; but this is not pretended in the present case.
Such would bo the law if there was a sale of Dubose’s note by defendant to plaintiff, in the first instance. But the case is stronger as it is. The note was at first lent to plaintiff merely for his accommodation. But of this no action could arise, whatever representations might be made him respecting the goodness of the note. Then he chooses to make the note his own, by voluntarily paying defendant for it, without taking an indorsement. Indeed, from looking at the judge’s notes of evidence, I collect from the testimony of the wit *512 ness ®reton» ^lat was *n ®®ay 1838> that plaintiff gavo do-, fendant his note for the amount of Dubose’s note, and paid his Qwn note Decemijer following. This was after the action brought against Dubose, when he knew the note had been dishonoured, and probably had reason to know the insolvency of Dubose. There can be no pretence of mistake.
Mayrant, for the motion.
Moses, contra.
Even if plaintiff had taken an indorsement in the first instance, he would have been bound to demand payment at the day the note became due and give notice to defendant. Can he be in a better situation because he neglected to take an in. dorsement 1
The motion is dismissed.
Johnson and O’Neall, Js. concurred.

Preston Harley v. Daniel S. Thornton.
Before Mr. Justice Richardson, at Barnwell, Spring Term, 1833,
Ban,£ Mis are famenulwhicii are applicable to "£§otiabu nj°tes checks: ^and where in the orb!Sss°the de-fondant passed bailón ^Ranit -which had stopped paymentbe-known to cither *510 party ¡ fiad, tlmt thcjlcfen-bio forillo ai mount of die bill; had been solder discounted, or had been taken party deceiving it. °
*509 This was a summary process to recover twenty dollars from the defendant under the following circumstances. In the course of a regular business transaction, the defendant passed to the plaintiff a twenty dollar bill on the Macon Bank of Georgia. The Bank had failed and stopped payment before this, but this fact was not then known in the community where this transaction occurred, or to the parties themselves, at the time the bill was passed. On these facts the presiding judge decreed for the plaintiff, and the defendant appealed and moves to reverse the decree.
Harper, J. I do not know what other rule can govern this case, than that which is applied by the English authorities to negotiable notes and bills, and to banker’s notes and checks, which are commonly circulated, and answer the purposes of cash. This rule, *510 though there has been a diversity in the cases on the subject, I take £0 t¡e settled thus : — that if such note or bill be paid ill satisfaction of a previous debt, or if it be paid in the ordinary course of business for a debt contracted at the time, as for goods sold, and it turns out be bad, the person receiving it, may resort to,and recover on the original cause of action. If the note, however, be sold or discontinued, or if there be an understanding or agreement that the party receiving shall take it as payment, and abide the risk, there can be no recourse if it prove bad. The older cases, which are referred to in Owenson v Morse, 7, T. R. 65, seem to make this distinction, that if the note be paid in satisfaction of a previous debt, and turns out to be Had, the party may resort to the original cause of action; otherwise, if on account of a debt contracted at the time. That distinction, for which there seems little reason, was overruled in the case referred to. In that case the party agreed to purchase some plate, and paid for it at the time in banker’s notes. At the time of the payment, the banker’s house was shut and. never opened again, he turning out insolvent; this was held to he no payment. To the same effect, I understand the remarks of Lord Eldon in ex parte Blackburn, 10 Ves. 206: “I take it now to be clearly settled, that if there is an antecedent debt, and a bill is taken without taking an indorsement, which bill turns out to be bad, the demand for the antecedent debt may be resorted to. .It has been held, that if there is no antecedent debt, and A. carries a bill to B. to be discounted, and B. does not take A’s. name upon the bill, if it is dishonoured, there is no demand; for there was no relation between the parties, except that transaction; and the circumstance of not taking the name upon the bill, is evidence of the purchase of the bill.. In a sale of goods,, the law implies a contract that those goods shall be paid for. It is competent for the party to agree that the payment shall be by a particular bill. In this instance, it would be extremely difficult to persuade a jury, under the direction of a judge, to say an agree *511 ment to pay by bills, was satisfied by giving bills, whether good or bad.” See also Puchford v. Maxwell, 6, T. R. 52. Chitty, in his treatise on Bills, P. 339, speaking of banker’s notes or checks, says, “ on account of their benig payable on demand, they are considered as cash, whether payable to order or to bearer, but if presented in due time, and dishonoured, they will not amount to-payment.” See also the American authorities on the same subject, referred to in a note to the American edition of Chitty, P. 118, n. (k.) Thus, it will generally happen that the holder of a bank note, who is in possession of it at the time the Bank stops payment, must bear the loss, provided that he has been in possession so long that a reasonable time for presenting the note and demanding payment has elapsed. It is always necessary that the note should be presented within a reasonable time, when the party intends to charge the person from whom he received it. In the present case, however, there is no question on this subject, for the Bank had stopped payment before the note was paid to plaintiff. In answer to a remark of counsel, it may be observed, that the insolvency of a bank is referred to the time of its stopping payment. It is supposed that any particular note would have been paid, if it had been presented before that time.
It does not appear on what account the note in question was paid to the plaintiff. It is stated to have been in the ordinary course of business. From this I infer that it was on some valuable considera-ation, that it was not a sale of the note, nor upon any understanding-that it should be at the plaintiff’s risk.
The motion is refused.
Johnson and O’Neall, Js. concurred.
Patterson, for the motion.
Bellinger, contra.